IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TANIKKA MICHELE WATFORD a/k/a | ) | Case No. B06-10347C-7G |
| TANIKKA CUNNINGHAM, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| KGB INTERNATIONAL, INC., a | ) | |
| California corporation, and CHANNEL | ) | |
| IMPORTS, LLC, an Oregon limited | ) | |
| liability company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: 06-2049 |
| | ) | |
| TANIKKA MICHELE WATFORD a/k/a | ) | |
| TANIKKA CUNNINGHAM, an individual | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| ARMSTRONG MARKETING, and | ) | |
| G. CEFALU & BRO., INC., and | ) | |
| CORNUCOPIA PRODUCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: 06-2050 |
| | ) | |
| TANIKKA MICHELE WATFORD | ) | |
| | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

THESE MATTERS came before the Court for hearing on April 25, 2007 upon the

Plaintiffs' Motions for Summary Judgment. Steven M. Defalco appeared on behalf of Plaintiffs

KGB International, Inc. ("KGB International") and Channel Imports, Inc. ("Channel"); Kate Ellis appeared on behalf of Plaintiffs Armstrong Marketing ("Armstrong"), G. Cefalu & Bros., Inc. ("Cefalu"), and Cornucopia Produce ("Cornucopia") (all five plaintiffs shall hereinafter be referred to as the "Plaintiffs"); and Dirk W. Siegmund appeared on behalf of the defendant, Tanikka Michele Watford ("Watford").  These separate adversary proceedings were consolidated for hearing and this Memorandum Opinion shall constitute the Court's ruling on both matters.

      The Complaints filed in these cases request that the Court declare the indebtedness owed to the Plaintiffs under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., to be nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.  The Plaintiffs allege that they delivered produce to Southern Solutions Produce, LLC ("Southern Solutions"), and that, as a result of those deliveries, the Plaintiffs became the respective beneficiaries of a statutory trust created by PACA.  Plaintiffs allege that Southern Solutions, as the trustee under those statutory trusts, breached a fiduciary duty to the Plaintiffs by not maintaining the PACA Trust Assets[1] in such a way as to make them available to satisfy the Plaintiffs' outstanding claims.  Finally, the Plaintiffs allege that Watford, as owner and operator of Southern Solutions, is subject to personal liability for the failures of Southern Solutions under PACA to properly maintain the PACA Trust Assets.  As such, the Plaintiffs allege that Watford's personal liability under PACA stems from a "defalcation while acting in a fiduciary capacity" and is nondischargeable under Section 523(a)(4) of the Bankruptcy Code.

---

[1] 11 U.S.C. § 499e(c)(2) provides that certain produce industry professionals hold in trust, for the benefit of unpaid sellers and suppliers and their agents, "[p]erishable agricultural commodities . . . and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products. . . ."  These items will hereafter be referred to as PACA Trust Assets.

I. FACTS

There are no material facts in dispute and the Motions for Summary Judgment were properly brought before the Court. The relevant facts in each case are as follows.

A. Southern Solutions

Southern Solutions was formed in October of 2004, and Watford has been the owner and operator of the company since its inception. Sworn Affidavit of Tanikka Watford, filed March 20, 2007, in the business bankruptcy of Southern Solutions ("Watford Business Affidavit"), p. 1. The company was formed to take advantage of government contracts for the procurement of produce. Id. Between October 2004 and January 2006, Southern Solutions struggled to establish itself as a regular supplier of produce to different government agencies. Id. In the process of establishing itself, Southern Solutions borrowed a significant amount of money from Bryant F. Cunningham, Watford's husband.[2] Id. The company eventually won lucrative contracts with the Department of Defense. Id. at 2. The company did not perform well under those contracts and by the end of January 2006, the company was no longer permitted to bid on future contracts. Id. at 4. In mid-February, Southern Solutions received a substantial amount of funds due on one of Southern Solutions' receivables. Id. With those funds, Southern Solutions paid the debt owed to Mr. Cunningham. Id. At all times pertinent to these adversary proceedings, Southern Solutions was a "dealer" as defined in PACA, and thus, subject to the provisions of PACA.[3] On February

---

[2] Watford states that the "total amount loaned by Mr. Cunningham was $94,138.40 not including any interest of 10% that was applied to the loan which made the loan total $103,552.25." Watford Business Affidavit, p. 4. She further states that Mr. Cunningham had been paid in full as of February 21, 2006. Id.

[3] PACA defines a "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign

24, 2006, Southern Solutions filed its voluntary Chapter 7 petition (case no. 06-10185).

B.  KGB International and Channel

At all times relevant to this adversary proceeding, KGB International and Channel were subject to and licensed under PACA. On December 29, 2005 and January 16, 2006, Channel sold two shipments of produce to Southern Solutions for the total invoice amount of $7,872.00. KGB/Channel Complaint, ¶ 10. From December 30, 2005 to January 13, 2006, KGB International sold three shipments of produce to Southern Solutions for the total invoice amount of $33,345.86. KGB/Channel Complaint, ¶ 10.[4] Southern Solutions accepted delivery of all five shipments from KGB International and Channel. Watford's KGB/Channel Answer, ¶ 11. At the end of January 2006, and after accepting delivery of the shipments from KGB International and Channel, Watford learned that Southern Solutions had lost the contract for which the shipments were sent. Watford's Business Affidavit, p. 3. Subsequent to Watford learning that Southern Solutions lost the contract, but prior to the filing of Southern Solutions' Chapter 7 petition, Watford contacted KGB International and Channel and informed both companies that the contract had been lost and advised them each to retrieve their produce from Southern Solutions'

---

commerce. . . ." 7 U.S.C. § 499a(b)(6).

[4]In the Affidavit of Tanikka Michele Watford, dated March 19, 2007, and filed in the KGB International/Channel adversary proceeding ("Watford KGB/Channel Affidavit"), p. 2, Watford avers that the produce sold by Channel and KGB International was delivered after the dates stated in the KGB International/Channel Complaint. As exhibits to the Affidavit of Kenneth C. Galloway in Support of Plaintiffs' Motion for Summary Judgment Against Tanikka Watford ("Galloway Affidavit"), invoices were submitted evidencing the sales from both KGB International and Channel to Southern Solutions. The shipment dates on those invoices are the dates alleged in the KGB International/Channel Complaint. The fact that the produce was delivered after the shipment dates is consistent with the Complaint and the Court interprets Watford's statement in Watford's KGB/Channel Affidavit as an elaboration on the facts surrounding the sales.

warehouse "in order to maximize its value." Watford KGB/Channel Affidavit, p.2. Neither KGB International nor Channel retrieved the produce. At the time that Southern Solutions filed its Chapter 7 petition, Southern Solutions had outstanding invoices owed to both KGB International and Channel. Watford's KGB/Channel Answer, ¶ 12. Included on each of the five invoices was statutory trust language, Galloway Affidavit, Exhibit B, the inclusion of which is one way for the beneficiary of a PACA Trust to preserve its rights to the PACA Trust Assets. 7 U.S.C. § 499e(c)(4).

C.  Armstrong, Cefalu, and Cornucopia

At all times relevant to this adversary proceeding, Armstrong, Cefalu, and Cornucopia were all licensed under and subject to the provisions of PACA. Armstrong/Cefalu/Cornucopia Complaint, ¶¶ 4, 5, 6. Between December 11, 2005 and January 18, 2006, Cefalu sold produce to Southern Solutions for the total invoice amount of $55,866.50. Armstrong/Cefalu/Cornucopia Complaint, ¶ 9. Between January 19, 2006 and February 13, 2006, Armstrong sold produce to Southern Solutions for the total invoice amount of $104,746.35. Id. Between January 19, 2006 and February 7, 2006, Cornucopia sold produce to Southern Solutions for the total invoice amount of $73,149.18. Id. Southern Solutions accepted delivery of the produce. Watford's Armstrong/Cefalu/Cornucopia Answer, ¶ 10. As noted above, by the end of January 2006, Southern Solutions had encountered significant problems and, as she did with KGB International and Channel, Watford contacted Armstrong, Cefalu, and Cornucopia to advise them of Southern Solutions' problems and to request that they retrieve the produce they had delivered in order to "maximize its value." Affidavit of Tinakka Watford, dated March 19, 2007, and filed in the Armstrong/Cefalu/Cornucopia adversary proceeding ("Watford Armstrong/Cefalu/Cornucopia

5

Affidavit"), p. 2.  Neither Armstrong nor Cefalu nor Cornucopia retrieved the produce.  At the time that Southern Solutions filed its Chapter 7 petition, Southern Solutions had outstanding invoices owing to Armstrong, Cefalu, and Cornucopia.  Watford's Armstrong/Cefalu/Cornucopia Answer, ¶ 13.  All seven of the invoices evidencing the indebtedness of Southern Solutions to Armstrong have printed on them the statutory trust language that is necessary to preserve Armstrong's rights to the PACA Trust Assets.  Affidavit of William Armstrong in Support of Motion for Summary Judgment, dated February 26, 2007, p. 3 (William Armstrong is the Proprietor of Armstrong and the invoices were submitted with his affidavit).  All six of the invoices evidencing the indebtedness of Southern Solutions to Cefalu have printed on them the statutory trust language that is necessary to preserve Cefalu's rights to the PACA Trust Assets.  Affidavit of Barry Coughlin in Support of Motion for Summary Judgment, dated February 26, 2007, p. 2-3 (Barry Coughlin is the Controller at Cefalu and the invoices were submitted with his affidavit).  All three of the invoices evidencing the indebtedness of Southern Solutions to Cornucopia have printed on them the statutory trust language that is necessary to preserve Cornucopia's rights to the PACA Trust Assets.  Affidavit of Michael Cavolina in Support of Motion for Summary Judgment, dated February 26, 2007, p. 3 (Michael Cavolina is the owner of Cornucopia and the invoices were submitted with his affidavit).

## II. STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides that the movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. V. Catrett, 477 U.S. 317, 330 (1986). The movant has the initial burden of establishing that there is no genuine issue as to any material fact, and all reasonable inferences must be drawn in favor of the nonmoving party. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the nonmoving party must present some evidence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the nonmoving party responds satisfactorily, the motion for summary judgment shall be denied, and the case proceeds to trial. However, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Id. at 249 (citations omitted).

### III. ANALYSIS

There is no dispute as to whether the Plaintiffs delivered the produce to Southern Solutions or as to whether Southern Solutions accepted delivery of the produce. Further, the Plaintiffs properly preserved their rights under PACA pursuant to their invoices as permitted by 7 U.S.C. 499e(c)(4). PACA provides that Southern Solutions held the produce and all proceeds of their sale in trust until the Plaintiffs were paid in full. 7 U.S.C. § 499e(c)(2). As such, the Plaintiffs have valid PACA Trust claims for the amount of their respective invoices.

A. Nondischargeability under Section 523(a)(4)

    I. Fiduciary Capacity

The Plaintiffs allege that the debts owed by Southern Solutions are nondischargeable debts of the Debtor pursuant to Section 523(a)(4), which provides that a Chapter 7 discharge does not discharge debts that are the result of "fraud or defalcation while acting in a fiduciary

capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Plaintiffs allege that the failure of Southern Solutions to pay for the produce is a "defalcation" as understood under Section 523(a)(4). To prevail under Section 523(a)(4), it must be shown "that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed a defalcation while acting in such capacity." Consumers Produce Co. v. Masdea (In re Masdea), 307 B.R. 466, 472 (Bankr. W.D. Pa. 2004) (citing Subich v. Verrone (In re Verrone), 277 B.R. 66, 71 (Bankr. W.D. Pa. 2002)).

"The concept of a fiduciary is narrower in a bankruptcy context than it is under the common law." In re Masdea, 307 B.R. at 472. "Whether a debtor qualifies as a fiduciary for purposes of § 523(a)(4) is a question of federal law." In re Masdea, 307 B.R. at 472 (citing Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1189 (9th Cir. 2001)); see also In re Verrone, 277 B.R. at 71. Courts have found that, in this context, a fiduciary capacity "only arises in conjunction with a technical trust, as opposed to a constructive or resulting trust." General Produce, Inc. v. Tucker (In re Tucker), No. 06-50092, Adv. No. 06-5107, 2007 WL 1100482, at *2 (Bankr. M.D. Ga. April 10, 2007)(citing Quiaf v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993)); see also Collins Bros. Corp. v. Perrine (In re Perrine), No. 05-10816, Adv. No. 05-1118, 2006 Bankr. LEXIS 2516, at *17 (Bankr. N.D. Ga. Aug. 8, 2006); Cardile Bros. Mushroom Pkg., Inc. v. McCue (In re McCue), 324 B.R. 389, 392 (Bankr. M.D. Fla. 2005); In re Masdea, 307 B.R. at 472; .N.P. Deoudes, Inc. v. Snyder (In re Snyder), 184 B.R. 473, 475 (D. Md. 1995); Nuchief Sales, Inc. v. Harper (In re Harper), 150 B.R. 416, 418 (Bankr. E.D. Tenn. 1993); Collins Bros. Corp. v. Nix, No. 91-40817, Adv. No. 91-4040, 1992 WL 119143, at *2 (Bankr. M.D. Ga. April 10, 1992)(citing Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934)); Tom Lange Co., Inc. v. Stout (In re Stout), 123 B.R. 412, 414 (Bankr. W.D. Okla. 1990). A statute may give rise to a

fiduciary relationship of the type required for nondischargeability under Section 523(a)(4). In re Masdea, 307 B.R. at 472 (citing In re Hemmeter, 242 F.3d at 1190; Quaif v. Johnson, 4 F.3d at 953-54). A "court must look to the trust attributes and requirements imposed by the statute to determine whether it falls within the scope of § 523(a)(4)." In re Tucker, 2007 WL 1100482, at * 2.

A technical trust has three elements: (1) an identifiable trust res, (2) specific fiduciary duties, and (3) an existence prior to and without reference to the act creating the debt. In re Tucker, 2007 WL 1100482, at * 4 (citing In re Snyder, 184 B.R. at 475); See also In re Perrine, 2006 Bankr.LEXIS 2516, at *18; In re Snyder, 184 B.R. at 475. In Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186 (9th Cir. 2001), the Ninth Circuit stated:

> In general, a statutory fiduciary is considered a fiduciary for the purposes of § 523(a)(4) if the statute: (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing.

Id. at 1190 (citing Windsor v. Librandi, 183 B.R. 379, 383 (M.D. Pa. 1995)(construing state securities act in § 523(a)(4) context)).

Under PACA, "the res is specifically identified as all perishable agricultural commodities and products and proceeds of such commodities." In re Tucker, 2007 WL 1100482, at * 5 (citing 7 C.F.R. Pt. 46.46(b)); See also In re Snyder, 184 B.R. at 475. Further, the statute imposes the duty upon the PACA trustee "to hold the trust assets for the benefit of unpaid suppliers until they have been paid in full." In re Tucker, 2007 WL 1100482, at *5; See also In re Snyder, 184 B.R. at 475; In re Stout, 123 B.R. at 415. Finally, the "trust arises upon the trustee's receipt of perishable agricultural commodities, which occurs when the trustee 'gains ownership, control, or

9

possession' of the goods." In re Tucker, 2007 WL 1100482, at *5 (citing 7 C.F.R. Pt. 46.46(d)(1); 7 C.F.R. Pt. 46.46(a)(1)). As a result, "the trust arises prior to any wrongdoing (i.e., failure to pay) and regardless of whether any wrongdoing occurs." Id.; See also In re Snyder, 184 B.R. at 475. Therefore, the trust imposed by PACA in this case satisfies the fiduciary capacity prong of Section 523(a)(4). In re Tucker, 2007 WL 1100482, at *5; See also In re Perrine, 2006 Bankr.LEXIS 2516, at *18-19 ("The majority of courts to have considered the issue have concluded that PACA creates a technical trust and imposes fiduciary duties upon the buyer that fall within section 523(a)(4)'s requirements."); In re Masdea, 307 B.R. at 472 ("A trust arising under § 499e(c)(2) is of the type required for § 523(a)(4) of the Bankruptcy Code to be operative.")(citing In re Snyder, 184 B.R. at 475)); Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois), 201 B.R. 501, 509 (Bankr. N.D. Ill. 1996); In re Harper, 150 B.R. at 418; Collins Bros. Corp. v. Nix, 1992 WL 119143, at *4; In re Stout, 123 B.R. at 415; but cf. In re McCue, 324 B.R. at 393.

    ii. Defalcation

    Having concluded that PACA satisfies the fiduciary capacity requirement under Section 523(a)(4), the court must now determine whether the actions of Southern Solutions constitute a defalcation within the meaning of Section 523(a)(4). In this context, courts have turned to Judge Learned Hand's analysis of defalcation in Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2d Cir. 1937). See, e.g., Quaif v. Johnson, 4 F.3d at 955. Judge Hand emphasized that in order for an act or omission to be characterized as a defalcation it need not rise to the level of fraud, embezzlement, "or perhaps not even a 'misappropriation.'" Central Hanover Bank & Trust, 93 F.2d at 512. This position is in line with Fourth Circuit precedent. See In re Ansari,

113 F.3d 17, 20 (4th Cir. 1997)("[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'")(citations omitted, brackets in original), cert. denied, 522 U.S. 914 (1997).  It is not necessary to show bad faith on the part of a debtor in order to show defalcation.  In re Tucker, 2007 WL 1100482, at *7; See also In re Perrine, 2006 Bankr.LEXIS 2516, at *23 (citing In re Zois, 201 B.R. at 507); Collins Bros. Corp. v. Nix, 1992 WL 119143, at *4.  Mere negligence, however, will not amount to defalcation under Section 523(a)(4).  In re Tucker, 2007 WL 1100482, at *7.

Here, Southern Solutions accepted various deliveries of Produce from the Plaintiffs between December 11, 2005 and February 13, 2006.  By the end of January 2006, the business operations of Southern Solutions had ground to a halt.  Pursuant to the statutory trust imposed by PACA, Southern Solutions had a fiduciary duty to preserve the PACA Trust Assets for the benefit of its unpaid produce suppliers until they were paid in full.  Pursuant to the provisions of PACA and its accompanying regulations, the PACA Trust applied to all of Southern Solutions' produce inventory, produce-related inventory, and proceeds thereof, "notwithstanding that another supplier may have been the source of the inventory."  Gullo Produce Co., Inc. v. A.C. Jordan Produce Co., Inc., 751 F. Supp. 64, 68 (W.D. Penn. 1990)(citing In re Fresh Approach, Inc., 51 B.R. 412 (N.D. Texas 1985); In re W.L. Bradley Co., Inc., 75 B.R. 505 (Bankr. E.D. Penn. 1987)).  In mid-February of 2006, Southern Solutions used PACA Trust Assets to pay off Mr. Cunningham.  This diversion of PACA Trust Assets was certainly a defalcation within the meaning of Section 523(a)(4).  Therefore, the debts owed to the Plaintiffs by Southern Solutions are nondischargeable pursuant to Section 523(a)(4).

B. Personal Liability Under Section 523(a)(4)

The Plaintiffs seek a finding that Watford is personally liable under PACA for the debts owed to them by Southern Solutions and that this personal liability is nondischargeable pursuant to Section 523(a)(4).  "The law is well settled that a corporate officer or controlling person can, in certain circumstances, be held liable for the corporation's PACA violations."  In re Tucker, 2007 WL 1100482, at *7 (citing Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005)); See also In re Masdea, 307 B.R. at 474 ("An individual who is in a position to control assets of a PACA trust but does not preserve them for the benefit of unpaid suppliers or sellers has breached a fiduciary duty."); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp 346, 348 (S.D.N.Y. 1993)("An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for the tortious act."); Hereford Haven, Inc. v. Stevens, No. Civ. A. 3:98-CV-0575-P, 1999 WL 155707, at *2 (N.D. Tex. March 12, 1999); In re Zois, 201 B.R. at 507; In re Harper, 150 B.R. at 419;  Collins Bros. Corp. v. Nix, 1992 WL 119143, at *6.

In this case there is no dispute that Watford was the controlling person with respect to Southern Solutions.  Watford states: "I, Tanikka Michele Watford, was the owner and operator of Southern Solutions. . . . I handled all the day to day operations, paid all invoices, acquired all contracts, and acquired all loans to the company."  Watford Business Affidavit, p. 1.  This degree of ownership and control over the company is more than sufficient for the Court to find that she is personally liable for the PACA Trust indebtedness of Southern Solutions and that the debts owed to the Plaintiffs are nondischargeable in Watford's personal bankruptcy.

### IV. CONCLUSION

Section 523(a)(4) provides that a Chapter 7 discharge does not discharge debts that are

the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The trust imposed by PACA on PACA Trust Assets satisfies the fiduciary capacity prong of Section 523(a)(4). Southern Solutions' use of PACA Trust Assets to pay Cunningham was clearly a defalcation within the meaning of Section 523(a)(4). Thus, the debts owed by Southern Solutions to the Plaintiffs, who are PACA trust beneficiaries, are nondischargeable under Section 523(a)(4). Because Watford owned, controlled, and managed the day-to-day affairs of Southern Solutions, the debts owed to the Plaintiffs are nondischargeable in Watford's personal bankruptcy.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**PARTIES IN INTEREST**

Dirk W. Siegmund

June L. Basden

Michael D. West

G. Cefaul & Bro.

Michael Cavolina

Tanikka M. Watford

William Armstrong